This is an appeal from two judgments of conviction and sentence entered by the Athens County Common Pleas Court. The court found Derek Brown and Todd Ebelein, defendants below and appellants herein, guilty of possession of a dangerous drug for sale in violation of R.C. 4729.51(C)(2)[1] following their no contest pleas.
Appellants assign the following errors for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN NOT GRANTING APPELLANTS' OCTOBER 23, 1997 'MOTION IN LIMINE/MOTION TO DISMISS' BECAUSE THE CANISTER IN QUESTION AND THE STATUS OF THE RECORD DO NOT CONFORM WITH THIS COURT'S DECISION IN STATE V. FRANKOVICH (MARCH 31, 1997), ATHENS APP. NO. 96CA1775."
SECOND ASSIGNMENT OF ERROR:
 "GIVEN THE STATUS OF THE RECORD, THE TRIAL COURT ERRED IN FINDING THAT NITROUS OXIDE, AS A MATTER OF LAW, IS A DANGEROUS DRUG."
THIRD ASSIGNMENT OF ERROR:
 "SINCE THERE WAS NO EVIDENCE OF SALE OF NITROUS OXIDE, THE STATE COULD NOT PROVE, AS A MATTER OF LAW, THAT THE CONTENTS OF A CANISTER WERE A 'DANGEROUS DRUG POSSESSED FOR SALE AT RETAIL' AND THE TRIAL COURT ERRED IN FINDING SAME."
FOURTH ASSIGNMENT OF ERROR:
 "IF ANYTHING, THE DEFENDANTS SHOULD HAVE BEEN SENTENCED UNDER OHIO REVISED CODE SECTION 2925.32, A MISDEMEANOR OF THE FOURTH DEGREE NOT A FELONY OF THE FIFTH DEGREE AND THE TRIAL COURT ERRED IN NOT DOING SO."
On April 10, 1997, the Athens County Grand Jury returned indictments charging each appellant with one count of possession of a dangerous drug for sale in violation of R.C.4729.51(C)(2). The indictment specified and appellants do not dispute that they possessed a canister containing nitrous oxide on November 2, 1996. Appellants argue, however, that their possession of nitrous oxide did not violate R.C. 4729.51(C)(2).
On June 5, 1997, appellants filed a motion to dismiss the indictment. Appellants argued that because a forensic lab report indicated that two black balloons which appellants allegedly filled from the canister containing nitrous oxide and sold to others on the date in question did not contain nitrous oxide, the prosecution could not prove that appellants "possessed for sale" the nitrous oxide in the canister. In a July 9, 1997 supplemental memorandum appellants argued that: (1) it is not illegal to possess a canister of nitrous oxide pursuant to R.C. 4729.51(C)(2) if the prosecution cannot prove that the nitrous oxide was actually sold; (2) nitrous oxide is not a dangerous drug pursuant to R.C. 4729.01; (3) it would have been more appropriate to charge appellants under R.C.2925.32; and (4) "R.C. 2925.32, that became effective on January 1, 1997 to specifically preclude the sale of nitrous oxide under certain circumstances, became effective two months after the alleged sale and possession took place."
On July 28, 1997, appellee filed a response arguing that: (1) pursuant to State v. Frankovich (Mar. 31, 1997), Athens App. No. 96 CA 1775, unreported, nitrous oxide is a dangerous drug; (2) whether a sale occurred is a question of fact for resolution at trial;[2] and (3) because nitrous oxide is a dangerous drug, appellants may be charged pursuant to R.C.4729.51(C)(2).
On August 4, 1997, appellants filed a reply memorandum arguing that: (1) because there is no evidence that the nitrous oxide canister in question bears a label stating "caution — federal law prohibits dispensing without prescription," the nitrous oxide in the canister is not a dangerous drug; (2) because the balloons did not contain nitrous oxide, the prosecution, as a matter of law, cannot prove that appellants possessed nitrous oxide for sale; (3) the fact that the Ohio General Assembly amended R.C. 2925.32 to specifically mention nitrous oxide implies that none of the statutes in existence prior to the date of the amended statute applied to nitrous oxide. In the reply memorandum, appellants requested a hearing "for the State to produce these canisters to display to the Court what, if any, labeling exists on said canisters."
On October 23, 1997, appellants filed a combined motionin limine and motion to dismiss. In the motion in limine
portion of the combined motion, appellants requested the trial court to prohibit the prosecution from introducing into evidence the nitrous oxide canister and the results of any tests performed on the canister or its contents. Appellants once again argued that the nitrous oxide in the canister is not a dangerous drug as that term is defined by R.C. 4729.02(D). In the motion to dismiss portion of the combined motion, appellants once again cited Frankovich and requested the trial court to dismiss the action because the canister did not bear a label stating "caution — Federal law prohibits dispensing without a prescription." Appellants also once again requested the trial court to hold a hearing for the purpose of inspecting the canister and its labeling.
On October 30, 1997, appellee filed a memorandum contra appellants' combined motion in limine and motion to dismiss. Appellee argued that forensic laboratory reports indicate that although labeling on the canister indicated that the canister contained automotive nitrous oxide mixed with sulfur dioxide, the canister contained nitrous oxide alone. Thus, appellee argued, the canister was required to carry the federal warning label mentioned in Frankovich. Appellee further argued that it would call Robert Amiet of the Ohio State Board of Pharmacy to testify at trial that federal law requires a warning label for nitrous oxide canisters the size of the one in question. Appellee concluded that "merely because the [canister] did not have the proper labeling for the substance it contained should not prevent [the nitrous oxide] from being labeled a dangerous drug by this court."
On November 14, 1997, appellants filed another memorandum in support of their combined motion in limine and motion to dismiss. Appellants again argued that Frankovich stands for the proposition that nitrous oxide is not illegal to possess or to sell in Ohio unless it is in a container which bears a federally required warning label.
On December 8, 1997, the trial court held a hearing on appellants' motions. At the hearing, the trial court viewed the canister in question and the canister's labels. Appellee noted for the record that the canister was approximately twenty-two inches in circumference and twenty-one and one-half inches in height. Appellants' attorney argued that the size of the canister was irrelevant. According to appellants' attorney, the relevant factor is the quantity of nitrous oxide that is actually in the canister.[3] With regard to the trial court's question of whether the transfer of nitrous oxide from a container with a federally required warning label to a container without a federally required warning label would change the status of the nitrous oxide from a dangerous drug to a non-dangerous drug, appellants' attorney answered "yes." In response to the prosecution's argument that the nitrous oxide in question was mis-branded under federal law, appellants' attorney argued that the indictment does not include a count involving misbranding.
On December 11, 1997, the trial court issued a decision overruling appellants' combined motion in limine and motion to dismiss. The trial court wrote in pertinent part as follows:
 "Essentially, the Defendants argue that the nitrous oxide contained in the canister in the instant case cannot be a dangerous drug pursuant to R.C. 4729.02(D) because the canister does not contain the language that the Defendants submit is required by State v. Frankovich (Mar. 31, 1997), Athens App. No. 96CA1775, unreported. The Defendants argue that the nitrous oxide, which would be a dangerous drug if contained in the canister described in Frankovich, would not be a dangerous drug if transferred from that canister to the canister at issue herein. However, the Court finds that the transfer of nitrous oxide from one tank to another does not make the drug any less dangerous. * * *
* * *
 The Court finds that Frankovich held that nitrous oxide is a dangerous drug as defined by R.C. 4729.02(D) despite the fact that whipping cream dispensers which contain nitrous oxide can be sold without a prescription. The Court further finds that the canister herein is much larger than a whipping cream dispenser.
 Accordingly, the Court finds that nitrous oxide, as a matter of law, is a dangerous drug despite the fact that it exists in a canister that does not have the Frankovich cautionary language. The Court denies the Defendants' Motion in Limine and Motion to Dismiss.
On December 18, 1997, Appellant Todd Ebelein entered a no contest plea and the trial court found him guilty as charged. On December 30, 1997, Appellant Derek Brown entered a no contest plea and the trial court also found him guilty as charged. On March 9, 1998, the trial court fined appellants $1,000 each and sentenced them to five years of community control subject to the general supervision and control of the Adult Parole Authority.
Appellants filed timely notices of appeal.
 I
In their first assignment of error, appellants assert that the trial court erred by not granting their motion in limine
and motion to dismiss. In support of this assignment of error, appellants argue that the canister in question and the status of the record do not conform to our decision in State v.Frankovich (March 31, 1997), Athens App. No. 96CA1775, unreported.
Initially, we must determine whether appellants properly preserved for appeal the matters that they raise in this assignment of error. Appellants filed a combined motion captioned "Motion in Limine and Motion to Dismiss." The motionin limine portion of the combined motion sought a ruling on the admissibility of "the alleged nitrous oxide canister and any test results relating to the canister or its contents." The motion to dismiss portion of the combined motion sought, in the alternative, a dismissal of the action for the reason that "the nitrous oxide tank in question does not qualify under the mandates of State v. Frankovich (Mar. 31, 1997), Athens App. No. 96 CA 1775, unreported, as containing a dangerous drug." After the trial court overruled both prongs of the combined motion, appellants entered no contest pleas.
Although the trial court overruled both portions of appellants' combined motion, the trial court did not provide separate reasons for the denial of each portion. We must determine the true nature of appellants' combined motion[4] and, using rules governing the appealability of rulings on motionsin limine and motions to dismiss, we must determine whether appellants properly preserved for appeal the matters that they raise in this assignment of error.
To the extent that appellants' combined motion sought a ruling on the admissibility of "the alleged nitrous oxide canister and any test results relating to the canister or its contents," the combined motion was a motion in limine. In Statev. French (1995), 72 Ohio St.3d 446, 449, 650 N.E.2d 887, 890, the court quoted Black's Law Dictionary (6 Ed. 1990) 1013 as follows: "A 'motion in limine' is defined as '[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." InFrench, the court emphasized that a ruling on a motion inlimine is a "tentative, interlocutory, precautionary ruling" which the trial court may change at trial when the disputed evidence appears in context. Id. See, also, State v. Grubb
(1986), 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142; State v.Spahr (1976), 47 Ohio App.2d 221, 353 N.E.2d 624.
A ruling on a motion in limine does not preserve the record for appeal. An appellate court may not review the ruling unless the claimed error is preserved by an objection at trial. Grubb
citing State v. Leslie (1984), 14 Ohio App.3d 343,471 N.E.2d 503; State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523, paragraph one of the syllabus; State v. Maurer (1984),15 Ohio St.3d 239, 473 N.E.2d 768; State v. Hall (1989), 57 Ohio App.3d 144, 567 N.E.2d 305; State v. Satterwhite (Oct. 19, 1994), Summit App. No. 16772, unreported. Thus, to the extent that appellants' combined motion constituted a motion inlimine, appellants failed to preserve any claimed error regarding the motion.
We further note that a no contest plea generally waives any claim of error with respect to an adverse ruling on a motionin limine. See State v. Asman (1989), 63 Ohio App.3d 535,579 N.E.2d 512; State v. Ruegsegger (1989), 64 Ohio App.3d 626,582 N.E.2d 633; Columbus v. Sullivan (1982), 4 Ohio App.3d 7,446 N.E.2d 485; State v. Trikilis (July 31, 1996), Medina App. No. 2511-M, unreported; State v. Sams (Oct. 25, 1995), Washington App. No. 94 CA 48, unreported. Crim.R. 12(H),[5] which provides that a no contest plea does not preclude a defendant from asserting on appeal that the trial court erred in ruling on a pretrial motion, generally does not apply when a defendant who has pleaded no contest appeals a trial court's ruling on a motion in limine.[6] Thus, to the extent that appellants' combined motion constituted a motion in limine, appellants' no contest pleas waived any claim of error with respect to the trial court's decision overruling the motion.
We will now examine the motion to dismiss portion of appellants' combined motion. Appellants apparently believe that to the extent that their combined motion sought a dismissal of the action for the reason that "the nitrous oxide tank in question does not qualify under the mandates of State v.Frankovich (Mar. 31, 1997), Athens App. No. 96 CA 1775, unreported, as containing a dangerous drug," the combined motion was a motion to dismiss. We disagree with appellants' apparent belief in this regard.
A trial court considering a pretrial motion to dismiss a criminal action must consider only the face of the charging instrument. If resolution of the motion requires an examination of evidence, the motion is not a motion to dismiss. InState v. Daily (Jan. 15, 1998), Athens App. No. 97 CA 25, unreported, we discussed the nature of motions to dismiss as follows:
 "When considering whether to dismiss criminal charges against an accused, a trial court should only look to the face of the charging instrument. Elyria v. Elbert (Oct. 4, 1995), Lorain App. Nos. 96CA6082 and 95CA6083, unreported. A motion to dismiss filed pursuant to Crim.R. 12 tests the sufficiency of the charging document, without regard to the quantity or quality of evidence which may eventually be produced by the state. State v. Patterson (1989), 63 Ohio App.3d 91, 95, 577 N.E.2d 115. As a result, a motion to dismiss a criminal charge should be denied when the complaint is valid on its face. State v. Edwards (Nov. 12, 1997), Lorain App. No. 97CA6660, unreported. If a motion to dismiss requires examination of evidence beyond the face of the complaint, it must be presented as a motion for acquittal under Crim.R. 29 at the close of the state's case. State v. Varner (1991), 81 Ohio App.3d 85, 610 N.E.2d 476. See, also, Cleveland v. Shields (1995), 105 Ohio App.3d 118, 123, 663 N.E.2d 726 (Blackmon, J., concurring), which noted that 'There is no provision in Ohio's Rules of Criminal Procedure for a motion to dismiss a criminal case founded upon lack of probable cause. * * * Furthermore, there is no provision for summary judgment or a pretrial motion challenging the legal sufficiency of the evidence in the Rules of Criminal Procedure.' "
See, also, State v. O'Neal (1995), 103 Ohio App.3d 151,658 N.E.2d 1102, discretionary appeal not allowed (1995), 73 Ohio St.3d 1411,651 N.E.2d 1309; State v. Patterson (1989),63 Ohio App.3d 91, 577 N.E.2d 1165, motion for leave to appeal overruled in (1989), 46 Ohio St.3d 707,545 N.E.2d 1280 ("a motion to dismiss charges in an indictment tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced");State v. Hython (Oct. 19, 1994), Medina App. No. 2302-M, unreported ("the judgment of dismissal upon motion was premature and the issues raised as to proximate cause await another day"); State v.Campbell (Sept. 3, 1993), Wood App. No. 92WD102, unreported (quoting and following Patterson, supra.)
In the case sub judice, appellants requested the trial court to look beyond the face of the indictment. Appellants requested the trial court to hold a hearing for the purpose of examining the nitrous oxide canister in question and determining whether it had a federally required warning label that we discussed inState v. Frankovich (Mar. 31, 1997), Athens App. No. 96 CA 1775, unreported. Thus, in view of the fact that the motion to dismiss portion of appellants' combined motion required an examination of evidence beyond the face of the indictments, appellants should have presented this portion of their combined motion as a Crim.R. 29 motion for acquittal during trial.
Appellants, however, chose not to proceed to trial. Rather, appellants chose to enter no contest pleas and waive their right to a trial on the merits. Appellants, by entering their no contest pleas, waived any alleged error relating to the trial court's ruling on the motion to dismiss portion of their combined motion.[7]
Assuming, arguendo, appellants had properly preserved for appeal the issues they raise in this assignment of error, we would find no error. We begin our discussion on the issues with a review of the law governing nitrous oxide.
Both federal law and state law govern the use of nitrous oxide as a drug and the use of nitrous oxide in food preparation. Regulation appears to be necessary because nitrous oxide, when misused, can result in death. See, e.g., Powell v.Waterbeds 'N' Stuff, Inc. (May 23, 1996), Licking App. No. 96-CA-00020, unreported.
One federal regulation, 21 C.F.R. 184.1545, which lists nitrous oxide as a food additive generally recognized as safe, describes the manufacture, federal regulation, and permissible use of nitrous oxide as follows:
Sec. 184.1545 Nitrous oxide.
 (a) Nitrous oxide (empirical formula NINF2/INFO, CAS Reg. No. 10024-97-2) is also known as dinitrogen monoxide or laughing gas. It is a colorless gas, about 50 percent heavier than air, with a slightly sweet smell. It does not burn but will support combustion. Nitrous oxide is manufactured by the thermal decomposition of ammonium nitrate. Higher oxides of nitrogen are removed by passing the dry gas through a series of scrubbing towers.
 (b) The Food and Drug Administration is developing food-grade specifications for nitrous oxide in cooperation with the National Academy of Sciences. In the interim, the ingredient must be of a purity suitable for its intended use.
 (c) In accordance with Sec. 184.1(b)(1), the ingredient is used in food with no limitations other than current good manufacturing practice. The affirmation of this ingredient as generally recognized as safe (GRAS) as a direct human food ingredient is based upon the following current good manufacturing practice conditions of use:
 (1) The ingredient is used as a propellant, aerating agent, and gas as defined in Sec. 170.3(o)(25) of this chapter.
 (2) The ingredient is used in dairy product analogs as defined in Sec. 170.3(n)(10) of this chapter at levels not to exceed current good manufacturing practice.
 (d) Prior sanctions for this ingredient different from the uses established in this section do not exist or have been waived. [48 FR 57270, Dec. 29, 1983]
(Emphasis added.)
Another federal regulation, 21 C.F.R. 184.1(b)(1), permits the use of nitrous oxide and other food ingredients generally recognized as safe "in accordance with current good manufacturing practice." The only reference to quantity in21 C.F.R. 184.1(b) is the requirement that the quantity added to food must not exceed that amount "reasonably required to accomplish the intended physical, nutritional, or other technical effect in food."
Ohio Adm. Code 4729-25-01, effective on November 25, 1994, states that each person who wishes to purchase or to possess nitrous oxide for use in food must obtain a license from the Ohio Board of Pharmacy. Related regulations govern the security, storage, use, record-keeping and reporting requirements of nitrous oxide license holders.[8] See Ohio Adm. Code 4729-25-02 through 4729-25-04.
Two months after the November 2, 1996 incident in the casesub judice, the Ohio General Assembly amended R.C. 2925.32[9] to prohibit the dispensation and distribution of nitrous oxide to persons under age twenty-one except for medical or dental purposes, to prohibit the dispensation and distribution of nitrous oxide to persons over age twenty-one if the dispenser or distributor knows or has reason to believe illegal use will occur, to prohibit the sale of devices that permit a purchaser to inhale nitrous oxide, to require dispensers and distributors of nitrous oxide to keep certain records,[10] and to require dispensers and distributors of nitrous oxide to comply with certain labeling[11] and transaction identification requirements. Another statute effective on January 1, 1997, R.C. 2925.33, prohibits the possession of open cartridges of nitrous oxide in motor vehicles.
In the case at bar, the grand jury returned indictments charging appellants with possession of a dangerous drug for sale in violation of R.C. 4729.51(C)(2). Appellants rely upon R.C. 4729.02(D) which defined[12] "dangerous drug" in pertinent part as follows:
(D) "Dangerous drug" means any of the following:
 (1) Any drug to which either of the following applies:
 (a) Under the "Federal Food, Drug, and Cosmetic Act" is required to bear a label containing the legend "Caution: Federal law prohibits dispensing without prescription" or "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian" or any similar restrictive statement, or "may be dispensed only upon a prescription";
Pursuant to R.C. 4729.02(D)(1)(a), nitrous oxide is a dangerous drug if it is required to bear either of the federal warning labels mentioned in that statute or "any similar restrictive statement." 21 C.F.R. 201.161 exempts nitrous oxide intended for drug use from the 21 C.F.R. 210.100(b)(2), (3) and (c)(1) labeling requirements provided the nitrous oxide bears the following warning statement:
 "Warning — Administration of nitrous oxide may be hazardous or contraindicated. For use only by or under the supervision of a licensed practitioner who is experienced in the use and administration of nitrous oxide and is familiar with the indications, effects, dosages, methods, and frequency and duration of administration, and with the hazards, contraindications, and side effects and the precautions to be taken."
It appears that the above warning statement qualifies as "a similar restrictive statement" as that term is used in R.C.4729.02(D). Thus, it appears that nitrous oxide intended for drug use qualifies as a "dangerous drug" as that term is defined in R.C. 4729.02(D).
We disagree with appellants' application ofFrankovich to the case sub judice. In State v. Frankovich (Mar. 31, 1997), Athens App. No. 96 CA 1775, unreported, we noted that because the canister in that case bore a federally required warning label, the nitrous oxide in the canister was a dangerous drug pursuant to Ohio Adm. Code 4729-9-01(A) which defines "dangerous drug" as any drug whose package bears a label stating "Caution — Federal Law Prohibits Dispensing Without Prescription." In Frankovich we wrote in pertinent part as follows:[13]
 "We note that Mr. Amiet of the Ohio State Pharmacy Board testified that he had inspected the canister of nitrous oxide that appellant used when selling the balloons. Mr. Amiet informed the court that the canister bore the warning label 'caution — federal law prohibits dispensing without a prescription' as well as an additional label stating 'warning, administration may be hazardous or contra indicated, to be used only under the supervision of a licensed physician who has knowledge in its indications, side effects, warnings, contra indications.' Based on this testimony, the trial court could properly conclude that the contents of the canister had been designated as a prescription drug under the Federal Food, Drug and Cosmetic Act. Consequently, if the court found that the canister contained a prescription drug, then appellant violated R.C. 4729.51(C)(1). [Footnote omitted.]
 Appellant argues that nitrous oxide should not be considered a dangerous drug under R.C. 4729.02(D)(1).
 Appellant points out that Mr. Amiet acknowledged during his testimony that nitrous oxide is available without a prescription in some instances. Specifically, Mr. Amiet noted that nitrous oxide is available to the public without a prescription when 'packaged in small [carbon dioxide] type cartridges, and it's used for commercial whipping cream dispensers.' Thus, argues appellant, nitrous oxide cannot be a dangerous drug because R.C. 4729.02(D)(1) defines that term as '[a]ny drug that, under the "Federal Food, Drug and Cosmetic Act," or Chapter 3715. or 3719. of the Revised Code, may be dispensed only upon a prescription.' Appellant argues that based on Mr. Amiet's testimony, nitrous oxide is not a drug that may be dispensed only upon a prescription.
 We disagree with appellant's argument. While we acknowledge that Mr. Amiet testified that purchasing a small amount of nitrous oxide does not require a prescription, Mr. Amiet clearly stated that the warning label on the canister appellant possessed indicated that a container of that size requires a prescription. Further Ohio Adm. Code 4729-9-01(A) clarifies that 'dangerous drug' as defined in R.C. 4729.02(D)(1) means any drug whose package bears a label reading 'Caution — Federal Law Prohibits Dispensing Without Prescription.' Thus, appellant's argument appears to be inapplicable to the facts in this case. While R.C. 4729.51(C)(1) may not have applied if appellant had possessed only a small amount of nitrous oxide, it clearly applies in this case due to the large amount of the drug appellant possessed. Canisters of such size can only be sold or possessed by certain licensed entities detailed in R.C. 4729.51 and the danger inherent in administering such a large amount is reflected in the mandatory label that appears on those canisters."
(Emphasis added.)
Appellants attempt to construe our language inFrankovich concerning the Ohio Adm. Code 4729-9-01(A) definition of "dangerous drug" as a pronouncement that nitrous oxide canisters which do not bear a federally required warning label are not dangerous drugs. We made no such pronouncement inFrankovich.
We acknowledge that the Ohio Adm. Code 4729-9-01(A) definition of "dangerous drug" appears to support appellants' position in this action. We find an inconsistency, however, between that regulation and R.C. 4729.02(D)(1)(a). The statute defines "dangerous drug" not as a drug which actually bears a federal warning label, but rather as a drug which is required to bear a federal warning label. Again, we note that R.C.4729.02(D)(1)(a) provided[14] as follows:
(D) "Dangerous drug" means any of the following:
 (1) Any drug to which either of the following applies:
 (a) Under the "Federal Food, Drug, and Cosmetic Act" is required to bear a label containing the legend "Caution: Federal law prohibits dispensing without prescription" or "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian" or any similar restrictive statement, or "may be dispensed only upon a prescription";
(Emphasis added.)
Ohio Adm. Code 4729-9-01(A), by contrast, defines "dangerous drug" as a drug which actually bears a warning label:
 (A) "Dangerous drug," as defined in division (D)(1) of section 4729.02 of the Revised Code, means any drug or drug product whose commercial package bears a label containing the legend "Caution: Federal Law Prohibits Dispensing Without Prescription" or "Caution: Federal Law Restricts This Drug to Use By Or On The Order Of A Licensed Veterinarian" or any similar restrictive statement.
(Emphasis added.)
Regardless of the reason for the inconsistency between the statute and the regulation, the statute prevails. R.C. 4729.66
permits the board of pharmacy to make rules and regulationsnot inconsistent with the laws "pertaining to the purchase for resale, possession for sale, sale, or other distribution of dangerous drugs." Thus, we reject appellants' argument that nitrous oxide canisters which do not bear a federally required warning label are not dangerous drugs.
Accordingly, based upon the foregoing reasons we overrule appellants' first assignment of error.
 II
In their second assignment of error, appellants assert that the trial court erred by finding that "nitrous oxide, as a matter of law, is a dangerous drug despite the fact that it exists in a canister that does not have theFrankovich cautionary language." We find no reversible error concerning the trial court's finding in this regard.
Initially, we again note that appellants pleaded no contest and consequently, waived any error concerning the trial court's ruling on their combined motion in limine and motion to dismiss. Although the trial court may have erred by stating that "nitrous oxide, as a matter of law, is a dangerous drug * * *," appellants have waived any error in that regard.
Assuming, arguendo, appellants did not waive any error, we would find no reversible error. We question appellants' argument that the trial court, by making the above finding, announced that all nitrous oxide falls into the R.C. 4729.02
definition of dangerous drug. Although the first part of the trial court's decision, when read in isolation, can be interpreted in that manner, when read in its entirety the decision appears to indicate that the trial court believes that the question of whether the nitrous oxide in a particular case is a dangerous drug depends on the circumstances of that particular case.
Accordingly, based upon the foregoing reasons, we overrule appellants' second assignment of error.
 III
In their third assignment of error, appellants assert that without evidence that they sold nitrous oxide, the state "could not prove" that they possessed nitrous oxide for sale. Once again, we note that because appellants pleaded no contest, they waived any error concerning the trial court's ruling on their combined motion in limine and motion to dismiss. Furthermore, we note that because appellants pleaded no contest, appellee did not need to present any evidence before the trial court. InState v. Perry (1998), 83 Ohio St.3d 41, 43, 697 N.E.2d 624,627, the court emphasized that "[a] plea of no contest constitutes an admission of the facts alleged in an indictment, as well as an admission of the facts set forth by the state in its explanation of the circumstances surrounding the charge * * *." In State v. Bird (1998), 81 Ohio St.3d 582, 584,692 N.E.2d 1013, 1015, the court discussed the nature of a no contest plea in pertinent part as follows:
 "If there had been a trial, the state would have had to prove beyond a reasonable doubt all elements of the indictment, including that appellant's saliva is a deadly weapon and that appellant knowingly caused or attempted to cause the officer physical harm. However, with a no contest plea, the state was relieved of these obligations. The state only had to allege sufficient facts to charge a violation [of the statute]. * * *"
See, also, State v. Newell (Feb. 28, 1994), Athens App. No. 1572, unreported; State v. Sommers (Dec. 8, 1992), Ross App. No. 1856, unreported; State v. Weiher (June 13, 1990), Gallia App. No. 89CA10.
Thus, because appellants entered no contest pleas, appellee did not need to present any evidence to support the allegations of the indictment or to support appellee's explanation of the circumstances surrounding the crimes. For this reason, we find no merit to appellants' third assignment of error.
Assuming, arguendo, appellants had asserted under this assignment of error that appellee failed to allege sufficient facts in the indictment and in its explanation of circumstances[15]
to support appellants' convictions, we would find no error. We reject appellants' argument that in order to prove possession for sale, the state must prove that a sale occurred. Many statutes include both a prohibition against selling and a prohibition against possessing for sale certain items under certain circumstances. See R.C. 3704.16(B)(1) (parts or components used to tamper with motor vehicle emission control systems); R.C. 3743.65(A) (fireworks); R.C. 4301.58(C) (intoxicating liquor).[16] To require proof of a sale in order to prove possession for sale would render the possession for sale portions of those statutes ineffective. R.C. 1.47(B) requires that when construing a statute, a court must presume that the Ohio General Assembly intended the entire statute to be effective. For this reason, we find that the state need not prove that a sale occurred in order to prove that a defendant possessed an item for sale.
Our finding comports with State v. Haynes (1971), 25 Ohio St.2d 264, 267 N.E.2d 787, in which the court listed the elements of proof necessary to convict a defendant of possession for sale. The Haynes court noted that the state must prove that the defendant possessed the substance "for the purpose and with the intent to sell" the substance. The Haynes
court did not include proof of an actual sale among the elements that the state must prove. See, also, State v. Roberts
(1980), 62 Ohio St.2d 170, 405 N.E.2d 247, in which the court held that sale and possession for sale are allied offenses of similar import pursuant to R.C. 2941.25(A) if the possession for sale is incidental to, and an indivisible part of, the particular sale.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV
In their fourth assignment of error, appellants assert that the trial court erred by sentencing them to a fourth degree felony rather than a fifth degree misdemeanor. Appellants argue that they should have been sentenced under the version of R.C.2925.32 which became effective two months after the incident in question.[17] We note, however, that appellants cite no authority in support of this proposition. It appears that appellants base their argument upon R.C. 1.58(B) which provides in pertinent part as follows:
 (B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.
Pursuant to R.C. 1.58, if the Ohio General Assembly reduces the penalty for a crime and a defendant who committed the crime prior to the amendment of the criminal statute has not yet been sentenced, the trial court must sentence the defendant pursuant to the amended statute. In State v. Rush (1998), 83 Ohio St.3d 53,56, 697 N.E.2d 634, 637, the Ohio Supreme Court noted that R.C. 1.58(B) "does not create a vested right to be sentenced according to amended laws: it is a general rule of statutory construction." See, also, State ex rel. Maynard v. Corrigan
(1998), 81 Ohio St.3d 332, 691 N.E.2d 280.
In the case sub judice, the Athens County Grand Jury returned indictments charging appellants with violating R.C.4729.51(C)(2). The Ohio General Assembly has not amended either R.C. 4729.51(C)(2) or R.C. 4729.99(E)(1), the statute governing penalties for violations of R.C. 4729.51(C)(2). Thus, we find that R.C. 1.58 has no application to the case sub judice. The penalty for violations of R.C. 4729.51(C)(2) remains the same as it was on the day appellants committed the offenses. Trial court correctly sentenced appellants in accordance with R.C.4729.51(C)(2) and R.C. 4729.99(E)(1).
Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellants to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellants fail to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Kline, P.J. Harsha, J.: Concur in Judgment Only Abele, J.: Concurs in Judgment Opinion
For the Court
 BY: _________________________ Roger L. Kline Presiding Judge
 BY: _________________________ William H. Harsha, Judge
 BY: _________________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] R.C. 4729.51(C)(2) provides in pertinent part as follows:
 * * * no person shall possess for sale, at retail, dangerous drugs.
 R.C. 4729.99(E)(1) provides that violation of R.C. 4729.51(C)(2) is a fifth degree felony if the offender has no previous drug convictions.
[2] Appellee wrote that "two agents will testify that they observed the defendants filling and dispensing balloons; that the agents approached the defendants and purchased balloons filled from the [canister] being held in evidence; and, that the [canister] being held in evidence was found to contain nitrous oxide." Appellee further wrote that "the mere fact that the balloons no longer contain nitrous oxide does not defeat the state's case that the balloons once contained nitrous oxide may reasonably be concluded by the trier of fact based upon circumstantial evidence which will be produced at trial."
[3] We note that appellants cite no law permitting possession of a particular quantity of nitrous oxide. It appears that neither federal nor state law permit possession of a particular quantity of nitrous oxide. See our discussion under appellants' first assignment of error regarding federal and state regulation of nitrous oxide.
[4] Many courts have faced the task of determining the true nature of a motion in order to determine whether a ruling on the motion is appealable. See, e.g., State v. Ulis (1992), 65 Ohio St.3d 83, 600 N.E.2d 1040 (court of appeals held that motion labeled as a motion to suppress was a motion in limine, but Ohio Supreme Court reversed); State v. Reck (Dec. 21, 1994), Darke App. No. 1352 CA, unreported (trial court treated motionin limine as motion to suppress); State v. Jackson (June 17, 1994), Clark App. No. 3020, unreported (trial court treated motion identified as a motion to dismiss as a "motion inlimine/motion to suppress").
[5] Crim.R. 12(H) provides in pertinent part as follows:
 (H) The plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence.
[6] Although the Ohio Supreme Court recently carved several exceptions to the general rule that defendants who plead no contest may not appeal pretrial evidentiary rulings, none of the exceptions apply in the case sub judice.
In State v. Bowsher (1996), 116 Ohio App.3d 170, 173-174,687 N.E.2d 316, 318-319, the court summarized the exceptions as follows:
 "* * * [The Supreme Court of Ohio] has held that a plea of no contest does not preclude appellate consideration of issues raised in pre-trial evidentiary motions when denial of the motion would be dispositive of the action. State v. Engle
(1996), 74 Ohio St.3d 525, 528, 660 N.E.2d 450 (Resnick, Alice, J. concurring); State v. Ulis (1992), 65 Ohio St.3d 83, 600 N.E.2d 1040; Defiance v. Kretz (1991), 60 Ohio St.3d 1, 573 N.E.2d 32. 'Judicial economy is served by allowing the defendant to plead no contest and then to appeal the evidentiary ruling rather than completing the trial.' Engle, citing Kretz at 4 and State v. Malinovsky
(1991), 60 Ohio St.3d 20, 22-23, 573 N.E.2d 22. The same has been held of denied pretrial motions to dismiss based upon a defendant's statutory right to a speedy trial. Id. citing Montpelier v. Greeno (1986), 25 Ohio St.3d 170, 171-172, 495 N.E.2d 581; State v. Luna (1982), 2 Ohio St.3d 57, 58, 442 N.E.2d 1284.
 The policy favoring early determination of dispositive issues, '* * * applies not only to constitutional issues but also to non-constitutional claims capable of determination without a trial on the general merits.' State v. Ulis, supra, at 85. * * *"
In State v. French (1995), 72 Ohio St.3d 446, 450,650 N.E.2d 887, 891, the court supplied a rationale for the exceptions by noting that motions in limine may be used "as the functional equivalent of a motion to suppress evidence that is either not competent or improper due to some unusual circumstance not rising to the level of a constitutional violation." In State v.Ulis (1992), 65 Ohio St.3d 83, 85, 600 N.E.2d 1040, 1041, the court gave further rationale for the exceptions by noting that the intent of the Criminal Rules is "to determine matters before trial when possible." The Ulis court cautioned that the early-determination policy "could be thwarted if the state and a defendant would be subject to trial where the case hinges upon an evidentiary issue subject to determination without additional evidence being elicited by either party." In Statev. Hiatt (1997), 120 Ohio App.3d 247, 697 N.E.2d 1025, at footnote 2, we cited Bowsher and Ulis and permitted a defendant who pleaded no contest to appeal because, we reasoned, his assignment of error involved an issue of statutory interpretation capable of resolution without any presentation of evidence. In State v. Craft (May 14, 1998), Athens App. No. 97 CA 53, unreported, we acknowledged "that situations may arise in which judicial economy could best be served by permitting appeals of pretrial motions in limine." InCraft we cited State v. Grubb (1986), 28 Ohio St.3d 199, 202,503 N.E.2d 142, 146, in which the court noted that a ruling against the state on "any motion, however labeled" that meets the criteria of Crim.R. 12(J) is appealable.
In the case sub judice, we find two reasons to disregard exceptions to the general rule that defendants who plead no contest may not appeal pretrial evidentiary rulings. First, we find that appellants' motion in limine, which seeks a ruling prohibiting the state from admitting into evidence the nitrous oxide canister and the results of any tests performed on the canister or its contents, is not the functional equivalent of a motion to suppress. The core of the motion rests not upon any allegation of unusual circumstance surrounding the state's acquisition of the canister and its contents, but rather rests upon appellants' argument that the nitrous oxide in this particular canister is not a dangerous drug as that term is defined by R.C. 4729.02(D). Second, we find that because final resolution of appellants' motion in limine requires presentation of additional evidence, appeal of the trial court's ruling on the motion in limine prior to the presentation of that evidence does not serve the interest of judicial economy. For these reasons, we apply the general rule that defendants who plead no contest may not appeal trial court rulings on motions in limine.
[7] Nothing in the record transmitted on appeal indicates that appellants entered their no contest pleas under the belief that appellate review of the issues raised in this appeal would be available. See, generally, State v. Ruegsegger (1989), 64 Ohio App.3d 626,582 N.E.2d 633; State v. Hall (1989), 57 Ohio App.3d 144,567 N.E.2d 305; State v. Amburgey (1993), 86 Ohio App.3d 635,621 N.E.2d 753; Columbus v. Quinn (Dec. 17, 1987), Franklin App. No. 86-AP-1079, unreported.
We note, however, that the record transmitted on appeal does not include a transcript of the hearings during which appellants entered their no contest pleas.
[8] Although appellants argue that small amounts of nitrous oxide are legal to possess for food purposes, appellants make no allegation that they manufacture food, possess an Ohio Adm. Code4729-25-01 license, or have otherwise complied with the regulations governing the use of nitrous oxide for food purposes.
[9] The version of R.C. 2925.32 which became effective on January 1, 1997, provides in pertinent part as follows:
 (B)(1) No person shall knowingly dispense or distribute nitrous oxide to a person age twenty-one or older if the person who dispenses or distributes it knows or has reason to believe the nitrous oxide will be used in violation of section 2925.31 of the Revised Code.
 (2) Except for lawful medical, dental, or clinical purposes, no person shall knowingly dispense or distribute nitrous oxide to a person under age twenty-one.
[10] The Ohio General Assembly first set July 1, 1998 as the effective date of the record-keeping requirements in R.C.2925.32(F). In H.B. 122, which was approved by the governor on April 29, 1998, the Ohio General Assembly delayed the effective date of the record-keeping requirements to July 1, 1999.
[11] Pursuant R.C. 2925.32(G)(1) all nitrous oxide cartridges must bear the following warning:
 "Nitrous oxide cartridges are to be used only for purposes of preparing food. Nitrous oxide cartridges may not be sold to persons under age twenty-one. Do not inhale contents. Misuse can be dangerous to your health."
[12] In their brief on appeal, appellants cite and rely upon this version of the statute defining "dangerous drug." We note that a somewhat different version of the statute was in effect at the time of the incidents in the case sub judice. For purposes of our analysis of the issues appellants raise under this assignment of error, we will apply the version of the statute that appellants used in their appellate brief.
We further note that the Ohio General Assembly renumbered the statute and made several slight stylistic changes to the statute in 1997 Senate Bill 66, approved by the governor on April 22, 1998.
The current numbering of the statute defining "dangerous drug" is R.C. 4729.01(F).
[13] We additionally note that because the defendant in Frankovich
pleaded guilty and thus waived his right to appeal the trial court's ruling on his motion to dismiss, our discussion inFrankovich concerning nitrous oxide constituted obiter dicta.
[14] See footnote 13 in which we mentioned the various versions of this statute.
[15] The record transmitted on appeal does not include a copy of the transcript of the hearing during which appellants entered their no contest pleas and, presumably, appellee explained the circumstances of the crimes. For purposes of our discussion under this assignment of error, we will assume that appellee explained the circumstances of the crimes in accordance with the statements of facts contained in the parties' appellate briefs.
[16] See, also, R.C. 3719.021 (license required both for wholesale selling and for possessing for wholesale selling of controlled substances); and R.C. 3737.841 (definition of "sale" in fire safety statute includes both selling and possessing for sale.)
[17] The version of R.C. 2925.32 which became effective on January 1, 1997 provides in pertinent part as follows:
 (B)(1) No person shall knowingly dispense or distribute nitrous oxide to a person age twenty-one or older if the person who dispenses or distributes it knows or has reason to believe the nitrous oxide will be used in violation of section 2925.31 of the Revised Code.
 (2) Except for lawful medical, dental, or clinical purposes, no person shall knowingly dispense or distribute nitrous oxide to a person under age twenty-one.