The STATE of Ohio, Appellant,

v.

ASMAN, Appellee.

[Cite as *State v. Asman* (1989), 63 Ohio App.3d 535.]

Court of Appeals of Ohio,
Franklin County.

Nos. 88AP–1164, 88AP–1165.

Decided July 27, 1989.

*Ronald J. O'Brien*, City Attorney, *James J. Fais*, City Prosecutor, and *Thomas K. Lindsey*, for appellant.

*Connor & Koltak Co., L.P.A.*, and *Ronald J. Koltak*, for appellee.

WHITESIDE, Judge.

This case is before this court on the appeal of plaintiff-appellant, the state of Ohio, from a decision by the Franklin County Municipal Court, which declared inadmissible the results of a BAC Verifier test administered to defendant-appellee, Jeffrey L. Asman. Plaintiff raises three assignments of error, as follows:

"1. The trial court erred in finding that the BAC Verifier was not properly tested and calibrated in compliance with Ohio Adm.Code 3701–53–02(C).

"2. The trial court erred in failing to find that the state substantially complied with Ohio Adm.Code 3701–53–02(C) in conducting the RFI survey.

"3. The trial court erred in sustaining defendant's motion to suppress the results of the BAC Verifier breath test."

On March 19, 1988, defendant was charged with operating a motor vehicle while under the influence of alcohol ("OMVI") in violation of R.C. 4511.-19(A)(1), operating a motor vehicle with a prohibited amount of breath alcohol ("OMVI *per se* ") in violation of R.C. 4511.19(A)(3), and speeding in violation of R.C. 4511.21. Utilizing a Breath–Alcohol–Content Verifier (BAC Verifier), defendant's breath was tested, and the results indicated that defendant's

blood contained a concentration of .125 alcohol per two hundred ten liters of breath.

Defendant moved to exclude from admission into evidence the results of the BAC Verifier test on the ground that the machine had not been properly tested. At an oral hearing on the motion, the parties stipulated as the evidence transcripts of testimony taken in two similar cases heard in the Franklin County Municipal Court, namely, *State v. Latshaw*, case Nos. 8802TFC–110902–1, 8802TFC–110902–2 and 8802TFC–110902–3, and *State v. Vazquez*, case Nos. 120402–1, 120402–2, 120402–3 and 120402–4.

On December 12, 1988, the trial court granted defendant's motion to exclude the BAC Verifier test results by half-sheet entry, following which plaintiff filed the instant appeal. A judgment entry reflecting the trial court's decision was subsequently filed on January 17, 1989.

■ We first address the state's third assignment of error, inasmuch as it is potentially dispositive of this appeal. Defendant's pretrial motion to preclude admission of the BAC Verifier test results was labeled in the alternative as a motion to suppress/motion *in limine*. The trial court granted defendant's request by sustaining the motion to suppress. The state argues that suppressing the test results is error, inasmuch as the alleged violation which occurred during the Radio Frequency Interference ("RFI") survey is at most a violation of state law and that only constitutional violations may warrant suppression of relevant evidence. See *State v. Myers* (1971), 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245; *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598.

■ We agree and hold that defendant's motion should be modified to reflect the granting of a motion *in limine*. However, the effect of our decision is not merely to correct the language in the trial court's judgment entry. Procedurally, a motion *in limine* is fundamentally distinct from a motion to suppress. A motion to suppress which has been decided is a final order which is appealable by the state when the requirements of Crim.R. 12(J) have been met. A motion *in limine*, however, does not generally serve to determine the final admissibility of evidence. It is instead, as stated in *State v. Spahr* (1976), 47 Ohio App.2d 221, 1 O.O.3d 289, 353 N.E.2d 624, paragraph one of the syllabus, "a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury."

A motion *in limine* which has been granted, consequently, serves as "a preliminary interlocutory order precluding questions being asked in a certain

area until the court can determine from the total circumstances of the case whether the evidence would be admissible." *Riverside Methodist Hospital Assn. v. Guthrie* (1982), 3 Ohio App.3d 308, 310, 3 OBR 355, 357–358, 444 N.E.2d 1358, 1361. In other words, sustaining the motion *in limine* acts only to avoid evidence of, or reference to, the BAC Verifier test results until the circumstances and evidence are such that the trial court, outside the presence of the jury, can determine with finality the admissibility of the evidence.

The state, thus, has the opportunity at trial to present evidence such as expert testimony to demonstrate the reliability of the test results notwithstanding the failure of substantial compliance with the Ohio Administrative Code provisions.

Accordingly, we find it proper to modify the trial court's order to reflect the granting of a motion *in limine*. The third assignment of error is well taken to this extent.

By its first and second assignments of error, the state contends that the trial court erred in finding that the BAC Verifier had not been properly tested in accordance with Ohio Adm.Code 3701–53–02(C).

R.C. 3701.143 grants to the Director of Health the authority to determine methods to chemically analyze a person's breath in order to measure the amount of alcohol in the person's blood. Accordingly, regulations were adopted which provide for the approval and testing of alcohol analysis instruments. They are set forth in Ohio Adm.Code 3701–53–02, which reads in pertinent part:

"(A) The following breath testing instruments are approved:

" * * * *

"(5) 'BAC Verifier'.

" * * * *

"(C) A radio frequency interference (RFI) survey shall be performed for each breath testing instrument listed in paragraphs (A)(1) to (A)(3) and (A)(5) of this rule that is in operation at each breath testing site. * * * Survey results shall be recorded on the form set forth in appendix G to this rule. * * * Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check." (Footnote omitted.)

Appendix G, referenced above, further outlines directions for conducting the RFI survey on the instrument, as follows:

"Using the diagram (page 2), sketch the floor plan surrounding the instrument. If radios are capable of multiple frequency transmission, each band is to be tested, using a separate form for each band. When the instrument has

reached operating temperature, two persons and two hand-held radios are needed for testing; one should remain with the instrument to receive transmissions and observe instrument readings. The other should be positioned at the farthest distance from the instrument on line 1. * * *
" * * *

"BAC VERIFIER. This instrument is protected from interfering radio frequencies by an internal RFI detector. Confirm operation of the detector by placing the instrument in run mode, and transmit while approaching the instrument. When instrument detects radio interference, mark diagram with an 'X' at farthest point from instrument that interference is noted."

The regulations contemplate a testing procedure for the BAC Verifier, which involves two people, each utilizing a hand-held radio. One person, beginning at a point thirty feet from the instrument along one of eight axes as shown in the diagram in Appendix G, approaches the machine while transmitting his radio. The second person, who is located at the instrument with his radio set to receive the transmission, serves both to observe the instrument readings and to receive transmissions to assure that the other hand-held radio is transmitting properly. If radio interference is detected while the first person advances toward the machine, the farthest point at which the interference was noted is to be recorded on the diagram with an "X." By proceeding in this manner along each of the eight axes, a perimeter is formed inside of which radio frequency interference can affect the BAC Verifier.

A member of the state patrol indicates only one RFI survey was conducted on the BAC Verifier during the relevant time period. During this survey on September 4, 1987, one person tested the instrument by transmitting from a hand-held radio while standing as far from the instrument along each axis as the confines of the room would allow. A second person remained with the BAC Verifier but failed to utilize the required hand-held radio. If the machine aborted, as it was designed to do if the radio frequency reached an unspecified level, the first person entered the adjoining rooms and again transmitted from the farthest point in those rooms along the same axes. An "X" was marked on the diagram at the farthest point from the instrument along each axis where the machine aborted.

Subsequent to the relevant time period, a second survey was performed on the BAC Verifier. This survey on July 15, 1988, was conducted by one person approaching the instrument from a distance of thirty feet along each of the axes while transmitting from a hand-held radio to a second person who received the transmissions using a second hand-held radio. The trooper testified that the results from the second survey did not vary appreciably from the first survey results.

Defendant points out that the first RFI survey was improperly conducted in two essential ways. First, only one hand-held radio was used, contrary to the regulation of use of two radios. Second, the trooper did not approach the machine from a distance of thirty feet as mandated by Appendix G. Defendant argues that, inasmuch as the mandates of Ohio Adm.Code 3701–53–02, including Appendix G, were not followed, the results of the breath test performed on defendant were not admissible because they were not in "substantial compliance" with the regulation.

The state contends that Ohio Adm.Code 3701–53–02 contains only three requirements: (1) that an RFI survey be performed; (2) that the survey results be recorded on Appendix G, and (3) that no radio-transmitting antennae be used in the RFI-affected zone during testing. The state argues that, as it is undisputed that these three requirements were met, the evidence should have been admitted. Further, the state argues that the language in Appendix G, which directs the survey to be conducted with two hand-held radios from a perimeter of thirty feet, constitutes merely general instructions and that the specific instruction for the BAC Verifier was fully complied with.

Plaintiff also contends that the instructions contained in Appendix G were substantially complied with. Finally, plaintiff argues that defendant was not prejudiced by the manner in which the first survey was conducted given the similarity of results between the first and second survey.

■■■■ The trial court granted defendant's motion to preclude admission of the test results for the reason that, "[b]ased upon the stipulations of the parties, the Court finds that the BAC Verifier used to test defendant's breath was not properly tested and calibrated as per Ohio Adm.Code 3701–53–02(C)." Although the state contends that the judgment entry fails to disclose whether the trial court required strict compliance with the Ohio Administrative Code or found a lack of substantial compliance, we must presume that the trial court adhered to the applicable law. Where findings are general, an appellate court will assume regularity rather than irregularity in the trial court's findings even if they be ambiguous as here. See *Ostrander v. Parker–Fallis Insulation Co.* (1972), 29 Ohio St.2d 72, 74, 58 O.O.2d 117, 119, 278 N.E.2d 363, 365. The trial court did not explain what it meant by the phrase "properly tested and calibrated as per Ohio Adm.Code 3701–53–02(C)," but we must assume that the court meant substantial compliance rather than strict compliance with the regulation since the rule of *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, is that the BAC Verifier is properly tested and calibrated if the prosecution proves substantial compliance with the regulations without prejudice to the defendant. Thus, we consider the trial court's

decision in light of *Plummer* which concerned the results of a urine-alcohol test.

In *Plummer*, the defendant sought to have the results barred from evidence because the urine sample had not been constantly refrigerated as required by Ohio Adm.Code 3701–53–05(F). In affirming the OMVI conviction, the Supreme Court declared in the syllabus of *Plummer* that "[a]bsent a showing of prejudice to a defendant, the results of a urine-alcohol test administered in substantial compliance with Ohio Adm.Code 3701–53–05 are admissible in a prosecution under R.C. 4511.19." Although the regulations promulgated by the Department of Health were not strictly followed, the Supreme Court of Ohio noted that "there is leeway for substantial, though not literal, compliance with such regulations." See, also, *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740.

The trial court in the case *sub judice* committed no error in finding a failure of substantial compliance with Ohio Adm.Code 3701–53–02(C). Despite the regulation requirement that two persons, each using a hand-held radio, perform the test, the September 4, 1987 RFI survey was conducted with only one hand-held radio. The regulations further require that RFI must be tested from a perimeter of thirty feet around the BAC Verifier. The trooper walked only to the wall of the room in which the instrument was located or into the adjoining rooms, a distance which varied along each axis from seven feet to twenty-four feet.

Unlike *Plummer, supra,* where failure to refrigerate constantly defendant's urine sample possibly benefited defendant since refrigeration serves to help reduce vapor loss of alcohol, the admitted noncompliance with the regulations herein have no suggested benefit to defendant. Harry Shamanksy, the expert witness, whose testimony was stipulated in the instant proceedings, testified that establishing an outer uniform perimeter was absolutely essential to conducting a relatively error-free survey. (*Vazquez*, Tr. 126.)

Regarding the requirement that two hand-held radios be utilized, Shamanksy testified as follows (*Vazquez*, Tr. 117–118):

"Q. Now, with respect to a machine such as the BAC Verifier being thoroughly insulated from radio frequency interference, and further assuming that the radio frequency interference survey is the best way to do that, is there a reason, in your opinion, why it would be required for two people to be present each with a hand-held radio?

"A. Yes.

"Q. And could you tell the Court why, in your opinion, that would be prudent?

"A. It's really quite a simple matter. I'm confident that the reasoning behind that is the same reasoning that we do in our work, the same identical forum. We look to ensure that the signal that is transmitted by the radio frequency source—

"Q. Tell the Judge, too, please.

"A. —is both strong and continuous.

"Without having a continual means on which to verify that, the test would be null and void in my area. There is no way that I can understand that. Especially with a radio frequency source, you must have something to guarantee that that source is both active and generating radio frequency energy at the angle and direction at which it is intended; namely, in this case, the Verax machine antenna, which is part of the blow tube itself. And that, I believe, is, at a minimum, the reason why you must have a receiver on board to receive that carrier signal from the transmitter."

The state argued that two radios are not necessary because the internal RFI detector, which is unique to the BAC Verifier, serves the same function as the second hand-held radio. However, the Delaware County Court of Appeals in commenting upon this issue correctly stated, in pertinent part, in *State v. Laivins* (Apr. 25, 1989), Delaware App. No. 88–CA–35, unreported, 1989 WL 47926:

"The State should persuade the Director of Health to rewrite his regulations if this result is desired. The purpose of the RFI survey is to 'confirm' the operation of the internal detector. The purpose of the second radio is to remain with the instrument being tested to receive transmissions. Without the second radio by the machine to receive signals from the first radio, there is no way to know for sure that the radio is actually transmitting. Furthermore, since the object of the test is to determine whether the BAC Verifier's internal detector is functioning properly, it is anomalous to use the detector to test itself. If an RFI survey could be conducted accurately in that manner, we presume the Director would amend his regulations to say so. The fact that the machine aborts a test does not ensure that the BAC detector is working properly."

In other words, the purpose of the second radio is not served by the BAC internal detector for two reasons. First, the second radio serves to test whether the other radio is active and generating radio frequency energy at the angle and direction intended, which the internal detector does not do. Second, the second radio serves to test the proper operation of the internal detector itself.

The evidence supports a finding that the state has failed to demonstrate that the RFI survey substantially complied with Ohio Adm.Code 3701–53–02. The evidence also supports a finding that defendant would be prejudiced by such failure to comply since the survey is essential to assure that the BAC Verifier is functioning properly. The first and second assignments of error are not well taken.

For the foregoing reasons, the first and second assignments of error are overruled and the third assignment of error is sustained to the extent indicated; the judgment of the Franklin County Municipal Court is modified so as to constitute an order *in limine,* rather than an order of suppression of evidence, and as so modified is affirmed; and this cause is remanded to that court for implementation of the modification and for further proceedings in accordance with law consistent with this opinion.

*Judgment modified*
*and cause remanded.*

BOWMAN and AMMER, JJ., concur.

WILLIAM AMMER, J., of the Pickaway County Court of Common Pleas, sitting by assignment.