OPINION
Defendant-appellant Kerri Lee Boring appeals the April 3, 1997 Judgment Entry of the Perry County Court of Common Pleas, Juvenile Division, awarding custody of her three children to plaintiff-appellee Sylvia Brown.
 STATEMENT OF THE FACTS AND CASE
On July 9, 1992, the Licking County Court of Common Pleas, Domestic Relations Division, terminated the marriage between appellant and her first husband, Joshua D. Boring. Via Judgment Decree of Divorce dated December 14, 1992, appellant was named the residential parent of the children born of the marriage, James (DOB September 7, 1987), Jessica (DOB November 15, 1988), and Kayla (DOB December 29, 1990).[1] Appellant is also the mother of Khristopher Holden (DOB March 21, 1986), who was born out a prior relationship in which appellant was involved.
After the death of Kayla in December, 1992, the Perry County Juvenile Court placed James, Jessica, and Khristopher in appellee's home. After approximately seven months, the children were placed in a foster home. In September, 1993, the children were returned to appellant.
After being evicted from her apartment in January, 1995, appellant asked appellee to care for her children for one month while she found a new residence. Appellant provided appellee with the children's birth certificates, shot records, and social security cards, as well as letters necessary to enroll them in school, and to obtain any medical attention which might be needed. After two weeks, appellant returned for her children. Thereafter, on February 23, 1995, appellee filed a petition for custody for James, Jessica, and Khristopher. A hearing on the petition commenced August 4, 1995. Due to time constraints, the trial court was unable to complete the hearing in the time allocated. The matter was scheduled for pretrial conference on July 3, 1996.
At the pretrial conference, the following discussion took place between counsel for both parties and the trial court:
 JUDGE: Well my notes reflect that at, uh, when you came in last October both attorneys said we would really like to resolve this thing and here's what we propose, a Guardian Ad Litem and a Home Study and that both parties be bound by those recommendations. Ans [sic] so that was fine. Then the Defendant never posted the money.
 KING [appellant's attorney]: It was actually posted you Honor. It was just late.
 JUDGE: Very late. * * * So, are you still willing to allow your parties to be bound by the recommendation of these individuals, the Guardian Ad Litem and the Home Investigator?
 KING: The only problem I had with that your Honor was that you had of course heard most of the Plaintiff's witnesses, but you never had the opportunity to hear any of the Defendant's witnesses.
JUDGE: I think I heard two witnesses. Two or three.
 KING: No, actually I don't think you heard any of our witnesses.
 JUDGE: No, I heard two or three for the Plaintiff I mean.
* * *
 JUDGE: I did hear a portion, that's correct, but you were the one's that proposed to the Court to have these independent people evaluate. And that's what we did. I'm certainly able to distinguish and go by recommendations. That was as far as my understanding, your desire.
 HOWDYSHELL [appellee's attorney]: I don't deny that I may have agreed to that. I just have no recollection and I don't have anything in the file that I have with me to that effect. That's the reason I'd like to see the reports. Then we'll know where we are going to this.
 JUDGE: Well, at this point they haven't been completed because they haven't been to your home. If this is done and you are willing to go by the recommendations of these individuals, I'm not going to consider testimony of the people. If your not willing to agree to that then we have to come back for a two day trial I guess. To finish this thing.
 KING: Yes, you Honor I apologize I don't have a complete file with me today either. I'm trying to go on memory of what we talked about. My recollection was, and I'm not disagreeing with you at all I'm just telling you what I recall, was that we thought independent evaluations, both home investigations and a Guardian Ad Litem for the children would assist all of us in apossible [sic] settlement. I don't recall specifically your Honor saying that we would be bound by this, and it would be kind of like binding arbitration that we would then be precluded from presenting other evidence or testimony. We were all hopeful that this would give us enough guidance that we would in fact voluntarily settle the case.
 JUDGE: I recall that you had really tried to resolve it and we had two days set aside and about eleven thirty on the first day and you said you would like to have some independent outside recommendation and that everybody would follow those whatever they might be.
* * *
 HOWDYSHELL: Mrs. Brown indicates to me that she has recollection of what you have said.
 JUDGE: It was my understanding that you would follow the recommendation opf [sic] these non interested people. I have not read the reports.
* * *
 KING: Your Honor. After having had a chance to, for Kerri to hear this discussion of the Court and my speaking with her, she is willing to, well, she would like the Guardian Ad Litem and Home Investigator to compleate [sic] her home and visit the children in her home. Then once that is done she is willing to let the Court [sic] a decision, an order based upon those recommendations without the necessity of further court hearings, without further testimony I should say.
* * *
 HOWDYSHELL: Just one inquiry, Mrs. Brown agrees and she'll state that for the record that she would except the Guardian and the Homestudy reports. Does the Court intend to entirely rely on the Home Investigation and the Guardian Ad Litem's report. I think it might also be well for the Court to interview the children in chambers.
JUDGE: I already have.
* * *
Transcript of Proceedings, pp. 99-102.
Via Judgment Entry dated August 9, 1996, the trial court ordered the home investigator complete the home study of appellant's household and the Guardian Ad Litem interview appellant and make other such investigation as required to complete a report regarding the best interest of the minor children. The trial court noted it would conduct a second in-chambers interview of the children. The Judgment Entry also memorialized the parties' agreement to be bound by the recommendations of the home investigation, Guardian Ad Litem, and the in-chambers interviews of the children.
In her report, Colleen Blosser, the home investigator, found appellant provided the children with a decent, safe home which included the necessities for raising them and fulfilling their needs. Blosser concluded appellant's home was fit for the children. (Home Investigation: Kerri Boring, dated September 24, 1996). In a letter to the trial court dated October 7, 1996, Blosser reiterated her finding that appellant's home "well provided for all the needs and wants of the three Boring children." The investigator recommended appellant be awarded full custody of the minor children. In her report filed March 11, 1997, and date March 3, 1997, Michelle Moore, the Guardian Ad Litem, recommended, after interviewing the children, they be placed with appellee. The trial court conducted in-camera interviews of the children, both individually and together. In its April 3, 1997 Order, the trial court indicated the children had recounted three different versions of the current status of their lives.
Via the April 3, 1997 Order, the trial court found that it was in the best interest of the children to place them with appellee. The court granted appellant extensive visitation rights and ordered her to pay child support.
It is from the April 3, 1997 Order appellant prosecutes this appeal raising the following assignments of error:
 I. THE TRIAL COURT ABUSED IT DISCRETION AS A MATTER OF LAW IN AWARDING CUSTODY TO THE PLAINTIFF-APPELLEE ABSENT A SHOWING OF THE DEFENDANT-APPELLANT'S UNFITNESS AS A MOTHER PURSUANT TO 3109.04 OF THE OHIO REVISED CODE.
 II. THE ORDER OF THE TRIAL COURT IS IN ERROR BECAUSE THE FINDINGS OF THE COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JUDGE ABUSED HER DISCRETION BY IMPROPERLY EMPLOYING HER PERSONAL IDEALS INTO THE ORDER.
 III. THE TRIAL COURT ERRED BY MODIFYING THE PREVIOUS AWARD OF CUSTODY TO THE DEFENDANT-APPELLANT AND GRANTING CUSTODY TO THE PLAINTIFF-APPELLEE ABSENT A CHANGE IN CIRCUMSTANCES.
 II
In her second assignment of error, appellant maintains the trial court's April 3, 1997 Order is against the manifest weight of the evidence. Specifically, appellant contends the only evidence in the record which justified placement of the children with appellee was the recommendation of the Guardian Ad Litem as well as the personal ideals of the trial court. Appellant submits this evidence is insufficient to warrant stripping her of her parental rights.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
At the July 3, 1996 pretrial, appellant agreed to be bound by the recommendations of the Guardian Ad Litem and the home investigator. Appellant also permitted the trial court to conduct in-chambers interviews with James, Jessica, and Khristopher.
The Guardian Ad Litem's recommended that the children be placed with appellee. Although the record does not contain transcripts of the trial court's in-chambers interviews with the children, this Court assumes regularity, rather than irregularity, in the trial court's findings. State v. Asman (1989), 63 Ohio App.3d 535,540. We will assume the information obtained during the trial court's interviews supports the trial court's ultimate determination that the children be placed with appellee. Although the April 3, 1997 Order does not expressly set forth each specific finding gleamed through the interviews, a clear inference can be drawn from the Order that the trial court found it was in the best interest of the children to placed them with appellee.
Based upon the Guardian Ad Litem's recommendation as well as the trial court's observations and information obtained during the interviews, we find the April 3, 1997 Order was not against the manifest weight of the evidence. The guardian's recommendation and the trial court's interviews contain sufficient evidence to demonstrate it is in the best interest of the children to place them with appellee.
Appellant's second assignment of error is overruled.
 I III
By agreeing to be bound by the recommendations of the Guardian Ad Litem and the home inspector, as well as the trial court's in-chambers interviews with James, Jessica, and Khristopher, appellant waived her right to claim any error in the trial court's failure to find her unfit pursuant to R.C. 3109.04, and also waived any error in the court's failure to find a change in circumstances which would justify a modification of custody.
Appellant's first and third assignments of error are overruled.
The Judgment Entry of the Perry County Court of Common Pleas, Juvenile Division, is affirmed.
By: Hoffman, J., Farmer, P.J. and Reader, J. concurs.
 JUDGMENT ENTRY
CASE NO. CA 97-52
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Perry County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Kayla died on December 14, 1992, two weeks before her second birthday.