DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Joshua D. Kellough appeals the judgment of the Circleville Municipal Court, which, upon his plea of no contest, found appellant guilty of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(3). Appellant asserts that the trial court erred by denying his motion to suppress certain evidence, including the results of his breath test, the results of field sobriety tests, and appellant's statements to the police.
 {¶ 2} For the reasons that follow, we disagree with appellant and affirm the judgment of the trial court.
 Trial Court Proceedings {¶ 3} On December 9, 2001, a trooper for the Ohio State Highway Patrol pulled over Defendant-Appellant Joshua D. Kellough after observing appellant operate his motor vehicle left of center. According to the trooper, appellant went left of center during a left-hand turn, was weaving within his lane, and again went left of center by about a foot for a distance of approximately fifty to one hundred feet. After observing appellant's driving, the trooper effectuated a traffic stop and noticed a strong odor of alcohol emanating from appellant's person. The trooper also noticed that appellant's eyes were bloodshot and glassy and that appellant's actions were delayed.
 {¶ 4} The trooper proceeded to have appellant perform three field-sobriety tests: the horizontal gaze nystagmus (HGN) test; the walk-and-turn test; and the one-leg-stand test. After observing appellant's performance on these tests, the trooper placed appellant under arrest for operating a motor vehicle while under the influence of alcohol. After his arrest, appellant admitted to the trooper that he had consumed five beers and a shot of whiskey. Appellant took a breath test at the patrol post, the results of which indicated he had .139 grams of alcohol per 210 liters of breath.
 {¶ 5} Appellant was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and (3), driving left of center in violation of R.C. 4511.25, and failing to wear a seatbelt in violation of R.C. 4513.263.
 {¶ 6} At his initial appearance, appellant entered a not guilty plea. Eventually, appellant filed a motion seeking to suppress all evidence obtained after his arrest on the basis that his arrest was not supported by probable cause. Appellant also sought the exclusion of the results of the field-sobriety tests on the basis that their administration did not strictly comply with standards issued by the National Highway Traffic Safety Administration (NHTSA). In addition, appellant sought the exclusion of his statements to the trooper, asserting that he did not receive proper Miranda warnings. Finally, appellant asserted that the results of the breath test administrated at the patrol post should be excluded because its administration was not performed in compliance with regulations promulgated by the Ohio Department of Health (ODH).
 {¶ 7} The trial court conducted a hearing on appellant's motion to suppress and denied appellant's motion. Appellant then changed his plea to no contest on the charge of operating a motor vehicle in violation of R.C. 4511.19(A)(3), with the remaining charges being dismissed. The trial court sentenced appellant to thirty days incarceration and fined him $350, but suspended the entire jail sentence, placing appellant on probation for six months.
 The Appeal {¶ 8} Appellant timely filed his notice of appeal and presents the following assignments of error for our review.
 {¶ 9} First Assignment of Error: "The trial court erred in overruling Appellant's motion to suppress all testimony regarding chemical tests of Appellant's blood alcohol level where the prosecution failed to introduce any evidence whatsoever regarding the State's compliance or noncompliance with regulations promulgated by the Ohio Department of Health."
 {¶ 10} Second Assignment of Error: "The trial court erred in overruling Appellant's motion to suppress the results of field sobriety testing that was not conducted in strict compliance with standardized procedures."
 {¶ 11} Third Assignment of Error: "The trial court committed reversible error by overruling Appellant's motion to suppress evidence arising from a traffic stop that was not supported by reasonable articulable suspicion."
 {¶ 12} Fourth Assignment of Error: "The trial court erred in overruling Appellant's motion to suppress statements when the prosecution failed to establish that the arresting officer had fully provided the warnings required by Miranda v. Arizona."
 {¶ 13} Appellant's assignments of error assert that the trial court erred by denying his motion to suppress. As such, we address appellant's assigned errors conjointly and in a manner more conducive to our analysis.
 I. Standard of Review {¶ 14} Appellate review of a trial court's ruling on a motion to suppress evidence is a "two-step inquiry." State v. Evans (July 13, 2001), 1st Dist. No. C-000565; accord State v. Moats, Ross App. No. 99CA2524, 2001-Ohio-2502; State v. Woodrum, Athens App. No. 00CA50,2001-Ohio-2650. First, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. See Statev. Medcalf (1996), 111 Ohio App.3d 142, 145, 675 N.E.2d 1268; State v.Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7; In re Haubeil, Ross App. No. 01CA2631, 2002-Ohio-4095.
 {¶ 15} Second, "we engage in a de novo review, without deference to the trial court's conclusions, as to whether those properly supported facts meet the applicable legal standards." Evans, supra; accord Ornelasv. United States, 517 U.S. 690, 690, 116 S.Ct. 1657; State v. Duncan,130 Ohio App.3d 77, 719 N.E.2d 608.
 II. Initial Traffic Stop and Reasonable Suspicion {¶ 16} In his Third Assignment of Error, appellant asserts that the traffic stop conducted by the trooper was not supported by a reasonable articulable suspicion. Accordingly, appellant concludes that the stop was illegal and any evidence obtained following the stop must be excluded.
 {¶ 17} We note that the trooper stopped appellant after observing him drive left of center, a violation of R.C. 4511.25. Appellant asserts, however, that not every traffic violation justifies a traffic stop and refers us to State v. Glasscock (1996), 111 Ohio App.3d 371,676 N.E.2d 179. In Glasscock, the Twelfth District Court of Appeals relied on its prior decision in State v. Johnson (1995),105 Ohio App.3d 37, 663 N.E.2d 675, and held "the minor crossing of the center dividing line and riding along the right edge line were insufficient to provide [the officer] with a reasonable articulable suspicion that appellee was driving under the influence."
 {¶ 18} The holdings of Glasscock and Johnson, however, have effectively been overruled. See State/City of Nelsonville v. Woodrum, Athens App. No. 00CA50, 2001-Ohio-2650; State v. Terrell (Oct. 23, 2000), 12th Dist. No. CA99-07-020; State v. Moeller (Oct. 23, 2000), 12th Dist. No. CA99-07-128; see, also, State v. Hodge, 147 Ohio App.3d 550,2002-Ohio-3053, 771 N.E.2d 331.
 {¶ 19} In Woodrum, supra, this Court noted the difference between investigative stops and non-investigative traffic stops. A police officer makes an investigative stop when "the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity." Moeller, supra. The United States Supreme Court, inTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, set forth the standard for investigative stops and detentions. The Terry Court held that a police officer with "reasonable suspicion" of criminal activity, based upon "specific and articulable facts," may stop a vehicle and detain its occupants briefly for purposes of limited questioning. Id. at 21; seeState v. Williams (1994), 94 Ohio App.3d 538, 541, 641 N.E.2d 239.
 {¶ 20} On the other hand, a police officer may also stop a vehicle after observing a traffic violation. When an officer witnesses a traffic violation and stops the vehicle to issue a citation, that stop must be "supported by probable cause, which arises when the stopping officer witnesses the traffic violation." Moeller, supra; see, e.g., Dayton v.Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus ("Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment * * *."); see Whren v. United States,517 U.S. 806, 116 S.Ct. 1769; Pennsylvania v. Mimms, 434 U.S. 106,98 S.Ct. 330.
 {¶ 21} In the case sub judice, the trooper stopped appellant because he observed him driving left of center. See R.C. 4511.25. Accordingly, since the trooper observed appellant commit a traffic violation, he had probable cause to stop appellant. See Moeller andWoodrum, supra; Village of McComb v. Andrews (Mar. 22, 2000), 3rd Dist. No. 5-99-41. Accordingly, we note, once again, that reliance on caselaw holding that a "de minimis" traffic violation does not give rise to a reasonable articulable suspicion to justify a traffic stop is misplaced. The current status of the law is clearly that a de minimis violation of a traffic offense constitutes probable cause to stop a vehicle. See Daytonv. Erickson, 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus; State v.Wilhelm (1998), 81 Ohio St.3d 444, 692 N.E.2d 181; State v. McCormick
(Feb. 5, 2001), 5th Dist. No. 2000CA00204 ("The severity of the violation is not the determining factor as to whether probable cause existed for the stop."); accord State v. Weimaster (Dec. 21, 1999), 5th Dist. No. 99CA36; State v. Kuno (Nov. 6, 1997), 10th Dist. No. 97APC04-497 (holding that the trial court erred in finding a driver's de minimis marked-lane violation was insufficient to justify stopping the vehicle); State v.Turner (Dec. 21, 2000), 10th Dist. No. 00AP-248; State v. Gordon (Oct. 16, 2000), 12th Dist. No. CA99-12-022 ("We have previously held that the failure to operate a vehicle within a marked lane provided a sufficient basis for a stop. * * * Because probable cause existed that a traffic violation had occurred, the stop of appellant's vehicle did not violate the Fourth Amendment."); State v. Teter (Oct. 6, 2000), 11th Dist. No. 99-A-0073 ("When a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle * * *. Upon stopping the vehicle, however, the officer may perceive facts indicating that the driver is intoxicated."); State v. Brownlie (Mar. 31, 2000), 11th Dist. Nos. 99-P-0005 and 99-P-0006; State v. Cox (May 8, 2000), 12 Dist. No. CA99-08-089; State v. Schofield (Dec. 10, 1999), 11th Dist. No. 98-P-0099; State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156.
 {¶ 22} Thus, any time a police officer observes a traffic violation, regardless of its severity, he has sufficient probable cause to stop that vehicle. See id.; see, also, Woodrum and Andrews, supra. Furthermore, stopping a vehicle based on probable cause that a traffic offense has occurred is not improper "even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity." See Dayton v.Erickson, 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus.
 {¶ 23} Accordingly, we overrule appellant's Third Assignment of Error.
 III. Field-Sobriety Tests {¶ 24} In his Second Assignment of Error, appellant asserts that the trial court should have excluded the results of the field-sobriety tests administered by the trooper. Appellant argues that these tests were not administered in compliance with NHTSA standards.
 {¶ 25} Appellant relies on the Supreme Court of Ohio's decision inState v. Homan (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, wherein the court held that, "In order for the results of a field-sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id. at paragraph one of the syllabus. However, appellant's argument does not assert that the trial court erred in considering the results for its determination that probable cause existed for appellant's arrest. Appellant only asserts that the trial court erred in not suppressing the results of the field-sobriety tests.
 {¶ 26} In State v. Green, Pickaway App. No. 01CA8,2001-Ohio-2652, it was argued that field-sobriety tests not administered in strict compliance with standardized-testing procedures were not admissible at trial. In addressing this argument, we noted that the admissibility of field-sobriety test results does not involve constitutional questions such as probable cause. Accordingly, we found that the portion of the appellant's motion seeking the exclusion of the field-sobriety test results was not a motion to suppress and did not involve the application of the exclusionary rule. See State v. Green, supra (citing State v. French (1995), 72 Ohio St.3d 446, 650 N.E.2d 887;State v. Jones (2000), 88 Ohio St.3d 430, 727 N.E.2d 886). We determined that the portion of appellant's motion dealing with the administration of field-sobriety tests was more accurately indicative of, and required treatment as, a motion in limine. See id.
 {¶ 27} As we noted in Green, "Rulings on motions in limine are interlocutory orders from which an appeal is not afforded the losing party. However, if an objection to the challenged evidence is renewed at trial, the ruling on the motion in limine can be addressed on appeal since it has been preserved in the record." (Citations omitted.) SeeGreen, supra (citing French, supra; State v. Grubb (1986),28 Ohio St.3d 199, 503 N.E.2d 142; State v. Maurer (1984),15 Ohio St.3d 239, 473 N.E.2d 768).
 {¶ 28} In the present case, as was the case in Green, appellant changed his plea to no contest, thereby waiving his right to a trial. "Since there was no trial, the evidentiary issues raised in appellant's motion, specifically the admissibility at trial of the [field-sobriety test results], were not preserved for appeal and have been waived."Green, supra (citing State v. Asman (1989), 63 Ohio App.3d 535,579 N.E.2d 512; State v. Ruegsegger (1989), 64 Ohio App.3d 626,582 N.E.2d 633; Columbus v. Sullivan (1982), 4 Ohio App.3d 7,446 N.E.2d 485; State v. Trikilis (July 31, 1996), Medina App. No. 2511-M; State v. Sams (Oct. 25, 1995), Washington App. No. 94CA48; Statev. Huffman (Aug. 8, 2001), Wayne App. No. 00CA0084; State v. Hershner
(June 8, 2000), Athens App. No. 99CA58).
 {¶ 29} In addition, we note that appellant merely makes the bald assertion that the trooper's "administration of field sobriety [sic] tests deviated from established procedures in several respects." Appellant presents no facts, nor does he point to parts of the record, that would lead a court to conclude that the trooper failed to administer the tests in compliance with NHTSA standards. Aside from this unsupported assertion, appellant's only complaint is that the trooper failed to maintain his notes concerning the administration of the tests, not that the tests themselves were inadequately administered.
 {¶ 30} Therefore, we overrule appellant's Second Assignment of Error.
 IV. Miranda Warnings {¶ 31} In his Fourth Assignment of Error, appellant asserts the trial court erred by not suppressing his statements made to the trooper after his arrest. Specifically, appellant asserts that the trooper failed to obtain a written waiver of appellant's Miranda rights.
 {¶ 32} It is well-settled law that a Miranda waiver need not be expressly made in order to be valid. See State v. Murphy,91 Ohio St.3d 516, 518, 747 N.E.2d 765, 2001-Ohio-112, citing NorthCarolina v. Butler (1979), 441 U.S. 369, 373, 99 S.Ct. 1755; see, also,State v. Crittenden (Nov. 19, 2001), Clermont App. No. CA2001-04-045,2001-Ohio-8665. A court may infer a waiver from the suspect's behavior, viewed in light of all the surrounding circumstances. See Murphy at 518.
 {¶ 33} In the case sub judice, the trooper testified that appellant had been advised of his Miranda rights twice; once after he was placed under arrest at the scene of the motor vehicle stop and again when they arrived at the patrol post. During the time appellant was at the patrol post, he admitted to drinking five beers and a shot of whiskey.
 {¶ 34} Therefore, appellant was properly advised of his rights. Accordingly, we overrule appellant's Fourth Assignment of Error.
 V. Breath Test Results {¶ 35} In his First Assignment of Error, appellant asserts that the trial court erred by not excluding the results of his breath test. Appellant argues that the prosecution failed to prove that the breath test was administered in compliance with regulations promulgated by the ODH. Appellant's sole argument is that the prosecution failed to lay a proper foundation for the admission of the breath test results.
 {¶ 36} In order for alcohol tests to be admissible, the state must prove that the specimen was taken and analyzed in compliance with the methods and rules established by the ODH. See State v. Trill (1991)66 Ohio App.3d 622, 624, 585 N.E.2d 914, citing State v. Joles (Feb. 5, 1988), Lake App. No. 12-171; see, also, State v. Bennett (1990),66 Ohio App.3d 595, 597, 585 N.E.2d 897; State v. Steele (1977),52 Ohio St.2d 187, 370 N.E.2d 740. The testing officer(s) must, therefore, substantially comply with ODH rules in order for the test results to be admissible. See id.
 {¶ 37} In the case sub judice, the arresting trooper testified that he administered the breath test. Specifically, he testified that there was a twenty-minute observation period before the test was administered, that he was a certified operator of the BAC Datamaster, and that the results of the test indicated .139 grams of alcohol per 210 liters of breath. However, no testimony was presented regarding the maintenance or calibration of the breath-testing machine.
 {¶ 38} Nevertheless, prior to the commencement of the hearing, appellant and the prosecution entered into a discussion.[1] The prosecution turned over to appellant documentation concerning the maintenance and calibration of the BAC Datamaster used to test appellant. Appellant was asked whether the documentation was sufficient or if the testimony of another trooper who maintained the documentation was necessary. Appellant responded that whatever the prosecution cared to do was fine with him. Evidently, the trial court and the prosecution interpreted this response as a withdrawal of that prong of the motion to suppress seeking the exclusion of the results of the breath test on the basis of failing to comply with ODH regulations.
 {¶ 39} Following the hearing, but before going off the record, the trial court again gave appellant an opportunity to raise the issue of the admissibility of the breath test results. Appellant indicated that before the hearing began, he was in no position to withdraw any prongs of his motion. The trial court asked appellant whether he wanted an additional hearing on the issue of the BAC Datamaster. Appellant declined the trial court's offer.
 {¶ 40} Accordingly, we find that appellant effectively waived that portion of his motion to suppress, which sought the exclusion of the breath test results on the basis that the state failed to provide a proper foundation (i.e., compliance with regulations of the ODH). Although we note the apparent miscommunication between appellant, the prosecution, and the trial court, appellant failed to take advantage of the opportunity to resolve that miscommunication. Appellate courts generally will not consider errors which counsel could have called, but did not call, to the trial court's attention when such error could havebeen avoided or corrected by the court. (Emphasis added.) See State v.Joseph, 73 Ohio St.3d 450, 455, 1995-Ohio-288, 653 N.E.2d 285; State v.Lott (1990), 51 Ohio St.3d 160, 174, 555 N.E.2d 293; State v. Gordon
(1971), 28 Ohio St.2d 45, 276 N.E.2d 243, paragraph two of the syllabus.
 {¶ 41} Therefore, we overrule appellant's First Assignment of Error.
 Conclusion {¶ 42} The trial court did not err in denying appellant's motion to suppress. Accordingly, we overrule appellant's assignments of error in toto and affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the CIRCLEVILLE MUNICIPAL COURT to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY (60) DAYS UPON THE BAILPREVIOUSLY POSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J., and Kline, J.: Concur in Judgment and Opinion.
[1] The information concerning the events prior to the hearing is derived from an affidavit of the trial court judge who presided over the hearing. This affidavit was made a part of record pursuant to App.R. 9(E).