DECISION. *Page 2 
{¶ 1} Defendant-appellant Jerald Hundley was fleeing from police at speeds over 100 miles per hour when he lost control of his vehicle and hit a utility pole, splitting the vehicle in half. Three of his passengers died instantly. The fourth passenger survived for three hours without regaining consciousness. The police found large amounts of psychedelic mushrooms in the car and a loaded handgun under the driver's seat. Hundley, who had walked away from the scene of the crash, was treated several hours later for injuries related to the crash. At the time of the crash, Hundley had an impermissible amount of alcohol in his blood, as well as marijuana and benzodiazepine.
 {¶ 2} Hundley was found guilty by a jury of eight counts of aggravated vehicular homicide. Four of these counts were chargeable under R.C.2903.06(A)(1) as first-degree felonies for causing the deaths of his passengers while under the influence of drugs or alcohol. The other four counts of aggravated vehicular homicide were chargeable under R.C.2903.06(A)(2) as second-degree felonies for recklessly causing the deaths of his passengers.
 {¶ 3} Hundley was also found guilty of one count of failure to comply with an order of a police officer under R.C. 2921.331(B), four counts of failing to stop after an accident under R.C. 4549.02, one count of trafficking in psychedelic mushrooms under R.C. 2925.03(A)(2), and one count of carrying a concealed weapon under R.C. 2923.13(A)(1). The trial court imposed the maximum prison sentence for each count, with 11 of the terms to be served consecutively, for an aggregate 80-year term of imprisonment. *Page 3 
 {¶ 4} Hundley appealed his convictions.[1] We affirmed the findings of guilt, but vacated his sentences. We remanded his case to the trial court for a new sentencing hearing pursuant to the Ohio Supreme Court's decision in State v. Foster.[2] Following our remand, the trial court held a new sentencing hearing and imposed the same sentence that it had originally imposed. Hundley now appeals, raising a single assignment of error.
 {¶ 5} In his sole assignment of error, Hundley argues that his sentence is contrary to law. He presents three separate issues for our review. In his first issue, Hundley argues that the retroactive application of State v. Foster to his sentence violated both his due-process rights and the Ex Post Facto Clause of the United States Constitution.
 {¶ 6} This court has previously rejected arguments identical to those raised by Hundley in his appellate brief. In State v. Bruce[3] andState v. Lochett,[4] we held that the Ex Post Facto Clause does not apply to judicial decisionmaking and that criminal defendants' due-process rights are not violated by the Foster decision because it did not change the potential range of punishment for criminal offenses or the sentencing considerations for those offenses, but merely examined Ohio's sentencing scheme in light of existing United States Supreme Court authority.[5] Consequently, we find Hundley's first argument feckless.
 {¶ 7} Hundley next argues that the trial court erred by failing to merge his four aggravated-vehicular-homicide convictions under R.C.2903.06(A)(1) with his four aggravated-vehicular-homicide convictions under R.C. 2903.06(A)(2). Hundley argues *Page 4 
that the offenses were allied offenses of similar import under R.C.2941.25(A). While Hundley did not raise this issue at the resentencing hearing, we nonetheless have discretion pursuant to Crim.R. 52 to review the multiple sentences under a plain-error analysis.[6]
 {¶ 8} In State v. Ranee, the Ohio Supreme Court held that R.C.2941.25(A) requires a two-tiered test for determining whether two statutory offenses are allied offenses of similar import.[7] First, the court must determine whether the statutorily defined elements of each offense compared in the abstract "`correspond to such a degree that the commission of one crime will result in commission of the other.'"[8] "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends-the multiple convictions are permitted."[9] If the elements do correspond, however, the court must move to the second part of the test and inquire whether the crimes were committed separately or with a separate animus.[10] If the crimes were committed separately or with a separate animus, then the defendant may be convicted and sentenced for each of the multiple offenses.[11]
But if it is determined that they were not committed separately or with separate animus, then a defendant cannot be convicted of multiple offenses.[12]
 {¶ 9} Here, Hundley was convicted of four counts of aggravated vehicular homicide under R.C. 2903.06(A)(1), one count for each of the four victims. R.C. 2903.06(A)(1) provides, "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * as the proximate result of *Page 5 
committing a violation of Division (A) of [R.C. 4511.19]." R.C. 4511.19
provides that "no person shall operate any vehicle * * * if, at the time of the operation * * * the person is under the influence of alcohol * * *."
 {¶ 10} Likewise, Hundley was convicted of four counts of aggravated vehicular homicide under RC. 2903.06(A)(2), one count for each of the four victims. This statute provides, "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * recklessly."
 {¶ 11} With the statutory elements of each offense compared in the abstract, without reference to the particular facts in this case, it is apparent that some of the elements of the offenses are identical. Both statutes require that the defendant cause the death of another while operating a motor vehicle. But each type of aggravated homicide requires proof of an element that the other does not.[13] R.C. 2903.06(A)(1) is a strict-liability offense predicated on a violation of R.C. 4511.19, while R.C. 2903.06(A)(2) is predicated on recklessness. A defendant need not be under the influence of alcohol to act recklessly.[14]
Accordingly, the elements of these two types of aggravated vehicular homicide do not correspond to such a degree that the commission of one will result in the commission of another. Therefore, they are not allied offenses of similar import.[15]
 {¶ 12} We, therefore, need not determine, as Hundley urges, whether the two types of offenses were committed with a separate animus. Because the two offenses are not allied offenses of similar import on the basisof Rance, the trial court did not commit *Page 6 
plain error in sentencing Hundley on all counts of aggravated vehicular homicide. We, therefore, find Hundley's second argument meritless.
 {¶ 13} Finally, Hundley argues that the trial court erred in imposing consecutive sentences on the four counts of failing to stop after an accident. He contends that the four counts involved allied offenses of similar import and should have been merged for sentencing. We agree.
 {¶ 14} Hundley was convicted four separate times under the same criminal statute. As charged in the indictment, the elements of each count of failing to stop after the accident were identical.[16]
Accordingly, the first step of the Ranee analysis is satisfied.
 {¶ 15} Furthermore, the prosecution relied on the same conduct to support each of the four offenses. The state argues that four convictions were appropriate because there were four victims in the accident, but our reading of the statute convinces us otherwise. R.C.4549.02 is aimed at prohibiting a driver from "failing to stop and give his name and address after operating a vehicle that is involved in a collision on a public road."[17] The statute explicitly provides that if "the injured person is unable to comprehend and record the information required to be given by this section, * * * the driver * * * involved in the accident or collision forthwith shall notify the nearest police authority concerning the location of the accident or collision, and the driver's name, address, and the register number of the motor vehicle the driver was operating, and then *Page 7 
remain at the scene until the police officer arrives * * *."[18] Thus, the unit of prosecution in the statute is not the number of victims, but the number of collisions.[19]
 {¶ 16} While four people tragically lost their lives in the accident in this case, there was but one accident scene resulting in one failure to stop. Thus, there was but a single animus underlying the four charged offenses. As a result, we hold that Hundley's four convictions for failing to stop involved allied offenses of similar import and should have been merged into one conviction with one sentence. Accordingly, we sustain that part of Hundley's assignment of error challenging the multiple sentences on the four counts of failing to stop.
Judgment accordingly.
HENDON, J., concurs.
PAINTER, P.J., concurs in part and dissents in part.
[1] (Mar. 22, 2006), 1st Dist. No. C-040880.
[2] 100 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[3] 170 Ohio App.3d 92, 2007-Ohio-175, 866 N.E.2d 44.
[4] 1st Dist. No. C-060404, 2007-Ohio-308.
[5] Bruce, supra, at ¶ 10-11; Lochett, supra, at ¶ 9-12.
[6] State v. Comen (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640; see also, State v. Bybee (1999), 134 Ohio App.3d 395, 400, 731 N.E.2d 232, citing State v. Fields (1994), 97 Ohio App.3d 337, 646 N.E.2d 866
[7] (1999), 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, paragraph one of syllabus.
[8] Id. at 636 quoting State v. Blankenship, 38 Ohio St.3d 116, 117,526 N.E.2d 816.
[9] Id.
[10] Id.
[11] Id. at 638-639.
[12] Id.
[13] Rance, supra, at 638.
[14] See, e.g., State v. Culver, 160 Ohio App.3d 172, 2005-Ohio-1359,826 N.E.2d 367, at ¶ 60-¶ 70 (holding that aggravated vehicular assault based upon alcohol-impaired driving in violation of R.C.2903.08[A][1][a] and vehicular assault based upon recklessness, in violation of R.C. 2903.08[A][2] are not allied offenses of similar import); see, also, State v. Griesheimer, 10th Dist. No. 05AP-1039,2007-Ohio-837, at ¶ 14-¶ 19.
[15] Cf. State v. Liming, 2nd Dist. No. 03CA43, 2004-Ohio-168, at ¶ 5 (stating without analysis that aggravated vehicular homicide under R.C. 2903.06[A][1] and aggravated vehicular homicide under R.C.2903.06[A][2] are allied offenses of similar import).
[16] While this is an issue of first impression in Ohio, a number of other state courts with statutes analogous to R.C. 4549.02 have held that a defendant who injures multiple victims cannot be convicted multiple times for leaving the scene of a single accident. See, e.g.,State v. Powers (2001), 200 Ariz. 123, 23 P.3d 668; State v. Hardy
(Fla. 1998), 705 So.2d 979; State v. Nield (Ind. 1997), 677 N.E.2d 79;Dake v. State (Ala. 1995), 675 So.2d 1365; People v. Sleboda (1988), 166 Ill. App.3d 42, 579 N.E.2d 512.
[17] State v. Kyser (Aug. 10, 2000), 7th Dist. No. 98 CA 144; see, also, State v. Bowman (Dec. 6, 2001), 10th Dist. No. 01AP-514 ("A review of R.C. 4549.02 shows that one of the purposes of the statute is to require individuals involved in traffic accidents to give sufficient information to allow law enforcement officials to contact that individual if an investigation is conducted of the accident.");State v. Byrd, 7th Dist. No. 04 BE 40, 2005-Ohio-2720, at ¶ 39 (citing R.C. 4549.02 as a statute that is aimed at preventing harm to society as a whole rather than to a particular victim).
[18] R.C. 4549.02(A).
[19] Cf. State v. Jones (1985), 18 Ohio St.3d 116, 480 N.E.2d 408
(holding that because the aggravated-vehicular-homicide statute is framed in terms of an offender's conduct toward another, it authorizes a conviction for each person killed by a reckless driver).